*528 Smith, J.
(concurring). On January 23, 1997, about 3:30 a.m. three police officers boarded a bus in Albany, New York and announced that they were conducting a drug investigation. Without reasonable suspicion, they demanded the identification and bus tickets of all of the passengers. No one was told that he or she had a constitutional right to refuse the request. The sole reason for this conduct was that the bus had arrived from New York City which, according to the officers, was a major source of drugs. I agree with the majority that the police had no right to demand that everyone produce identification and a bus ticket. I also conclude that the defendant’s Federal and State constitutional rights were violated.
The facts indicate that the police boarded the bus, announced a drug interdiction investigation and told everyone to produce identification and a ticket. Specifically, a police officer at the suppression hearing testified, “I announced we were from the Sheriff’s Department, we were conducting interdiction, we were looking for contraband, I would like to see everyone’s identification and bus ticket.” One officer approached the defendant and his companion who were seated in the back of the bus. Another officer stood midway of the bus and the third officer stood at the door. One officer stated that he saw the defendant and his companion push down on a black object located between them. When the officer approached the two people in the back of the bus, they told him that they had tickets but no identification. When both looked away from the officer, he asked them a second and then a third time to produce identification and tickéts. The third time, the two produced tickets. The testimony of the officer was that both persons volunteered that the officer could look in their bag. When the officer removed the bag from the compartment near the seat, the officer asked if they would consent to his looking in the bag. When they both replied affirmatively, the officer looked in the bag and found a scale. He then asked both persons to stand up and requested to search defendant’s jacket. Defendant consented and a ball of cocaine was found. The two were arrested and defendant, after the denial of his motion to suppress, pleaded guilty to criminal possession of a controlled substance in the second and third degrees.
In his omnibus motion, defendant asserted that the police conduct violated his common-law rights, as well as both the *529 Federal and State Constitutions.* Specifically, defendant argued that he was seized in violation of the Fourth Amendment, that defendant did not feel free to disregard the police commands (citing People v Hollman, 79 NY2d 181, 194, which cited Florida v Bostick, 501 US 429, 434) and that his consent was involuntary and invalid.
The initial encounter was contrary to the police conduct permitted by People v De Bour (40 NY2d 210). De Bour describes four categories to evaluate police conduct when approaching a citizen — a request for information, a common-law right to inquire, a stop based on reasonable suspicion in accordance with Criminal Procedure Law § 140.50 (1) and an arrest based on reasonable cause (40 NY2d, at 227). The minimal intrusion of approaching to request information is permissible when the police have some objective, credible reason for the interference. In People v Hollman (79 NY2d 181, 189-190), this Court further explicated the first prong of the De Bour analysis, stating “that even in their law enforcement capacity, police officers have fairly broad authority to approach individuals and ask questions relating to identity or destination, provided that the officers do not act on whim or caprice and have an articulable reason not necessarily related to criminality for making the approach.” Here, the sole reason for boarding the bus, confronting passengers and conducting this random suspicion-less search was that the bus was coming from New York City, a locale where drugs exist and eight million people live.
The result of approving the conduct here would be that any person leaving New York City on a bus or train would be subject to being stopped by the police and requested to produce identification and a ticket indicating his or her destination. Consequently, people riding public transportation departing or arriving from New York City would be subject to indiscriminate police inquiry so long as the stated purpose for the intrusion was to investigate for drugs.
Furthermore, the fact that the officer approached the defendant and saw the defendant push something down, does not provide a basis for the officer to demand to search or to conduct a search of a bag. In People v Saunders (79 NY2d 181), this *530 Court refused to permit a search of a bag on consent when a police officer observed conduct that he thought was suspicious, namely that the defendant appeared nervous, looked around the area and gave his place in line to another passenger. Similarly, the defendant’s behavior did not warrant a search of his bags and defendant’s alleged consent was both involuntary and the result of unconstitutional police conduct (see, People v Gonzalez, 39 NY2d 122).
This case is akin to a checkpoint stop of vehicles for the investigation of drug activity, a procedure found violative of the Fourth Amendment in City of Indianapolis v Edmond (531 US 32), decided after the hearing in this case. In Edmond, the Supreme Court reiterated that such stops had to be based on reasonable suspicion:
“We decline to suspend the usual requirement of individualized suspicion where the police seek to employ a checkpoint primarily for the ordinary enterprise of investigating crimes. We cannot sanction stops justified only by the generalized and • ever-present possibility that interrogation and inspection may reveal that any given motorist has committed some crime” (531 US, at 44).
In Florida v Bostick (501 US 429), the Supreme Court indicated that pursuant to a program adopted by a Florida county, police had a right to board a bus and ask a particular individual, not the entire assembly of passengers, for identification and a ticket. In that case, the police officers, who were engaged in a drug interdiction program, told Bostick before they searched his luggage that he had the right to refuse consent. The Supreme Court addressed the limited issue of whether “a police encounter on a bus of the type described above necessarily constitutes a ‘seizure’ within the meaning of the Fourth Amendment” (id., at 433). In remanding the case for further proceedings, the Supreme Court stated that the appropriate inquiry on whether Bostick had been seized was not whether he felt free to leave but whether, considering all of the circumstances of the encounter, “the police conduct would have communicated to a reasonable person that the person was not free to decline the officers’ requests or otherwise terminate the encounter” (id., at 439).
Here, when the officers boarded the bus and demanded that all of the travelers produce identification and tickets without telling them that they had a right to refuse, positioned *531 themselves in three places in the aisle and persisted in questioning the defendant after he tried to ignore them, their conduct was arbitrary and constituted a seizure of the defendant in violation of the Fourth Amendment and article I, § 12 of the New York State Constitution. That seizure had to be supported by reasonable suspicion.
In sum, the police conduct violated defendant’s common-law rights and his constitutional rights under the Fourth Amendment and article I, § 12 of the State Constitution.
Chief Judge Kaye and Judges Levine, Ciparick, Wesley and Rosenblatt concur with Judge Graffeo; Judge Smith concurs in result in a separate opinion.
Order reversed, etc.

 Article I, § 12 of the New York State Constitution reads, in part, the same as the Fourth Amendment and states “[T]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, .and the persons or things to be seized.”